APPALACHIAN INSURANCE
COMPANY

v.

LIBERTY MUTUAL INSURANCE
CORPORATION.

Civ. A. No. 78–1151.

United States District Court,
W. D. Pennsylvania.

Jan. 26, 1981.

James E. McLaughlin, Pittsburgh, Pa.,
Phelan & Pope, Chicago, Ill., for plaintiff.

Louis Anstandig, Egler & Reinstadtler,
Pittsburgh, Pa., for defendant.

## OPINION

WEBER, Chief Judge.

Liberty Mutual Insurance Company has made a claim against Appalachian Insurance Company for indemnification for loss suffered by it in the settlement of claims in the case of *Wetzel v. Liberty Mutual Insurance Co.*, 372 F.Supp. 1146 (W.D.Pa.1974) aff'd 508 F.2d 239 (3d Cir. 1975), *cert. denied* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975) vacated portion of order dealing with pregnancy benefits, 579 F.2d 236 (3d Cir. 1977); cause of action under Equal Pay Act, 449 F.Supp. 397 (W.D.Pa.1978); 451 F.Supp. 967 (W.D.Pa.1978). Appalachian Insurance Company filed the present suit praying for a declaratory judgment that it was not liable to Liberty Mutual under the policy in effect between them. Both parties have filed motions for summary judgment on this issue and the court finds that the matter is appropriate for summary judgment, that there are no genuine issues of material fact and that the question may be determined as a matter of law.

The insurance policy in question was issued by Appalachian Insurance Company to Liberty Mutual Insurance Company, effective August 1, 1971 through August 1, 1974. It was designated as an excess third-party liability policy providing for indemnification over and above a policy effective the same date provided by Lloyd's of London. This policy is excess to the extent that Appalachian is liable to pay the excess over

the first $25,000 of liability for each occurrence, but is a participating insurance policy for all other purposes. The excess policy adopted the same terms as the underlying Lloyd's policy in providing coverage for an "occurrence" which was defined as:

> ... an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, property damage or advertising liability during the policy period. All such exposure to substantially the same general conditions existing or emanating from one premise location shall be deemed one occurrence.

The situation which gave rise to Liberty Mutual's loss for which it claims indemnification is as follows: Under the Civil Rights Act of 1964, Title VII, Congress prohibited discrimination in employment because of sex. The Act became effective on July 2, 1965. Beginning in 1965, Liberty Mutual initiated certain personnel policies attempting to accommodate women employees in its claims department all over the country. However well-intentioned the move was, it was met with claims that the policies discriminated against women in the claims department in hiring and promotion, in pay, and in the provision of certain health benefits. In May, 1971, claims were filed before the Equal Employment Opportunity Commission by certain aggrieved women under the statutory plan for relief. Upon satisfying the requirement for administrative review, the claimants filed suit in this court on February 28, 1972 on their behalf and on behalf of a class of women similarly situated. After various hearings the court found that the hiring and promotional policies discriminated against women and that the compensation plan discriminated against women employees. No injunction was issued against the hiring and promotional policies because Liberty Mutual had changed these after the filing of the EEOC complaint in May 1971 to eliminate the discriminatory factors before the case came to hearing in this court. The court's finding of discrimination in its denial of maternal benefits was set aside after the decision

of the Supreme Court in *Gilbert v. General Electric Co.*, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976). After further hearing the court found the pay differentials in various categories to be discriminatory against women and found Liberty Mutual to be liable to those female employees damaged thereby. A settlement of these claims to members of the class, dependent upon a formula to determine each individual's proper share, was entered into in September 1978, in an amount in excess of $5,500,-000.

Neither party disputes that the policy coverage extends to loss due to liability for sex discrimination.

Appalachian Insurance Company moves for Summary Judgment of non-liability for three reasons, without waiving any other defenses that it may wish to assert:

(1) There is no coverage under the Appalachian policy since the personal injuries sustained by the plaintiff class in *Wetzel* were the foreseeable result of Liberty Mutual's deliberate discrimination policies:

(2) Pursuant to the Lloyd's insurance policies issued to Liberty Mutual prior to 1971 and by operation of law the personal injuries sustained by the plaintiffs in the *Wetzel* litigation resulted from one occurrence for which Liberty Mutual must look to Lloyd's for coverage.

(3) If there are multiple "occurrences" for the purpose of coverage determination under the Appalachian excess policy, the underlying coverage of Lloyd's is adequate to fully pay the losses due to each of the multiple occurrences during the policy period.

Leaving aside Appalachian's first ground set forth above, the deliberate nature of Liberty Mutual's actions, in support of its other defenses, Appalachian claims that it is not liable to Liberty Mutual under its policy issued August 1, 1971 for the following reasons:

(1) Both the Appalachian 1971 policy and the Lloyd's 1971 policy are "occurrence" policies, defining occurrences as set forth above.

(2) An "occurrence" is identified by the cause of the loss and not its effect. Where there is one cause which results in several injuries, or injuries to several parties, there is only one occurrence.

(3) The "occurrence" which caused the injuries for which Liberty Mutual was required to pay damages to many claimants was Liberty Mutual's institution of certain job classifications in 1965 which discriminated against women in hiring, promotion and pay.

(4) Although there were many claimants in the *Wetzel* suit who were found to be entitled to damages, their claims arose out of the same initial occurrence or incident.

(5) Although the settlement required payment of damages suffered by some claimants as late as 1974, all such damages were a continuing result of a cause or occurrence set in motion in 1965, and are not covered by a policy which indemnifies for occurrences after August 1, 1971.

(6) The *Wetzel* lawsuit was initiated by an administrative claim filed in May 1971 by persons alleging discriminatory treatment before the effective date of the Appalachian policy.

(7) The Appalachian 1971 policy is an excess policy over and above the underlying coverage provided by an umbrella policy effective on the same date issued by Lloyd's of London.

(8) If there are multiple occurrences here, some of which occurred during the Appalachian policy coverage period 1971–1974, Appalachian is not liable because no single claim paid by Liberty Mutual exceeds $25,000 and Appalachian coverage extends only to claims exceeding $25,000.

Liberty Mutual argues first that the insurance contract should be construed under the law of Massachusetts, and we find that conclusion supported either under the doctrine that applies the law of the place of the contract or the place having the most significant contacts. However, we are unaware of any significant differences between the law of Massachusetts and the law of the forum state with respect to the issues considered here.

There seems to be little disagreement between the parties that the Appalachian policy here in question is an "occurrence" policy. The difference between this and the other common type of insurance has been explained by the United States Supreme Court as follows:

> "An 'occurrence' policy protects the policy holder from liability for any act done while the policy is in effect, whereas a 'claims made' policy protects the holder only against claims made during the life of the policy." *St. Paul Fire & Marine Ins. Co. v. Barry,* 438 U.S. 531, 535, 98 S.Ct. 2923, 2926 Note 3, 57 L.Ed.2d 932, 1978.

As illustrative of its definition the Supreme Court gave an example which is particularly applicable to the situation in this case. The Court noted that:

> "A doctor who practices for only one year, say 1972, would need only one 1972 'occurrence' policy to be fully covered, but he would need several years of 'claims made' policies to protect himself from claims arising out of his acts in 1972." 438 U.S. 531, pp. 535–36, 98 S.Ct. 2923, 2926, Note 3, 57 L.Ed.2d 932.

The difference between these types of insurance policies is further explained by the following:

> The insurance industry has, for some years, provided two basic types of professional liability insurance which may be classified as (a) "claims made" policies (sometimes called "discovery" policies), and (b) "occurrence" policies.
>
> ■ The basic "claims made" or "discovery" policy provides for indemnity, regardless of when the act complained of occurred, if the act is discovered and brought to the attention of the insurer during the policy period.
>
> ■ The basic "occurrence" policy provides for indemnity, regardless of when the act complained of is discovered or brought to the attention of the insurer, if the act occurred during the policy period.
>
> The case law throughout the country has generally recognized the difference in

these two basic types of coverage. (citations omitted).

■ Basically, the "claims made" policy would provide unlimited retroactive coverage and no prospective coverage at all, while the "occurrence" policy would provide unlimited prospective coverage and no retroactive coverage at all.

*Brander v. Nabors,* 443 F.Supp. 764 (N.D. Miss., E.D.1978).

■ We, therefore, come to the conclusion that it is the cause of the loss, and not the resulting injury that determines the incidents of liability under such policy.

■ Two consequences result from this definition; first, an insurer is only liable under an occurrence policy for an event or accident which occurred during the policy period, and he remains liable for all claims arising out of that event or accident regardless of the termination of the policy period: Second, the insurer is not liable for claims arising out of an event or accident which occurred prior to the effective date of the insurance coverage, even though damages and claims continued to accrue from this cause during the later period of coverage.

This Court has had occasion to consider the interpretation of insurance coverage for "each accident" occurring during a policy period. Where there were multiple claims made by purchasers of finished products manufactured with the use of material supplied by the insured, we found the defect in the product to be due to a single cause and, therefore, constituted only one accident under the insurance policy, despite the fact that there may be several resulting injuries to various claimants. *Union Carbide Corp. v. Travelers Indemnity,* 399 F.Supp. 12 (W.D.Pa.1975). A very similar result was arrived in *Champion International Corp. v. Continental Casualty Co.,* 546 F.2d 502 (2nd Cir. 1976) where the Court held that insurance covering property damage caused or arising out of each occurrence was limited by the underlying circumstances which resulted in the claim for damages and not by the number of individual injuries which resulted in claims.

■ Liberty Mutual argues that the definition of "occurrence" recited above contains the words "*or a continuous or repeated exposure to conditions* which unexpectedly and unintentionally results in injury ... during the policy period." It then points to findings of the court in *Wetzel* that pay differential violations against certain of the class plaintiffs continued throughout the Appalachian policy coverage period from August 1, 1971 through August 1, 1974.

Liberty Mutual then argues that because the term "occurrence" covers a "continuous and repeated exposure to conditions", the Appalachian policy must cover the damages that accrued after August 1, 1971 during its period of coverage. It adds that the formula used to determine damages in the settlement of the *Wetzel* case makes it readily possible to determine the damages accrued during the period of Appalachian coverage. This claim would be contrary to the rationale which we have accepted that this "occurrence" coverage is applicable to the results of a single "occurrence" in 1965 when Liberty Mutual adopted its employment policies which were the cause of the *Wetzel* action. Only by dividing an occurrence into separate periods for which damages were paid can this position be supported, and yet such an argument pre-supposes multiple or separate occurrences.

If we were to accept this contention we must again examine the coverage which the Appalachian policy supplied. The policy issued to Liberty Mutual by Appalachian is an excess liability policy in that it provides in Endorsement No. 1 that Appalachian shall only be liable for the ultimate net loss, the excess of .... "$25,000 ultimate net loss in respect of each occurrence for Personal Injury sustained by any employees of the assured." The policy, in other words requires that the loss suffered by any individual employee must exceed $25,000 before the insured can look to Appalachian for coverage. Therefore, Appalachian argues that it must be shown that the loss suffered by any single individual employee must first exceed $25,000 *before Liberty Mutual*

can look to Appalachian for coverage and no individual loss in excess of $25,000 has yet been asserted against Appalachian.

Carrying this argument to its conclusion Liberty Mutual seems to say that there are multiple "occurrences" for the purpose of coverage, but only a single "occurrence" for the purpose of applying the deductible feature. We can find only one definition of "occurrence" in the policy applying to both the coverage and the deductible provisions of the policy.

After having reached this conclusion we turn to an argument raised and answered by the parties that liability for damages caused by the "occurrence" of the personnel policies adopted in 1965 lies upon prior insurance policies issued by Lloyd's of London in effect for the period 1965–1968, and 1968–1971.

We have considered this argument to be irrelevant to our present determination, because there is no relation between those policies and Appalachian's present coverage, such as exists between Lloyd's umbrella policy of August 1, 1971, and Appalachian's excess coverage policy of the same date. Lloyd's is not a party to the present lawsuit, and the sole question for our determination is the extent of coverage under Appalachian's 1971 policy. The reference to liability under the Lloyd's 1965 policy arises because of the following language of the Lloyd's 1965 policy:

> [I]n the event that personal injury or property damage arising out of an occurrence covered hereunder is continuing at the time of termination of this policy Underwriters will continue to protect the Assured for liability in respect of such personal injury or property damage without payment of additional premium.

This is a specific provision of the Lloyd's 1965 and 1968 policies. The clause itself affords no benefit to Appalachian in this suit under its 1971 policy if it was otherwise liable.

Also, a doctrine of insurance law provides the same result. Where an injury first occurs during a policy period and continues beyond its expiration the insurer on the risk remains liable for the entire loss. *Harman v. American Casualty Co.*, 155 F.Supp. 612, (S.D.Cal.1957).

Having determined that Appalachian is not liable under its 1971 policy for any part of the loss claimed by Liberty Mutual we find it unnecessary to determine Appalachian's third argument that its coverage did not include the foreseeable result of Liberty Mutual's deliberately planned employment policies.