## APPALACHIAN INSURANCE COMPANY

v.

## LIBERTY MUTUAL INSURANCE COMPANY, Appellant.

### No. 81–1454.

United States Court of Appeals, Third Circuit.

Argued Nov. 12, 1981.

Decided March 24, 1982.

Rehearing and Rehearing In Banc Denied April 27, 1982.

---

Frederick N. Egler, Avrum Levicoff (argued), Egler & Reinstadtler, Pittsburgh, Pa., for appellant.

Peter C. John and Bradley B. Falkof (argued), Phelan, Pope & John, Ltd., Chicago, Ill., for appellee.

Before SEITZ, Chief Judge, GARTH, Circuit Judge, and CAHN *, District Judge.

## OPINION OF THE COURT

CAHN, District Judge.

Liberty Mutual Insurance Company (Liberty) appeals from a district court order

* Edward N. Cahn of the United States District Court for the Eastern District of Pennsylvania sitting by designation.

denying its motion for partial summary judgment and granting summary judgment for Appalachian Insurance Company (Appalachian).[1]

This action involves the question of whether a liability insurer must provide coverage for losses its insured incurred in the settlement of class action litigation involving sex discrimination in employment where the insured's discriminatory conduct originated before the effective date of coverage but had an impact on class members both before and after that date. The material facts underlying this action are not in dispute.

## I.

### A.

In 1965, Liberty adopted certain employment policies applicable to female employees in its claims department. Several female employees in Liberty's claims department filed charges in May 1971 before the Equal Employment Opportunity Commission alleging that these employment policies discriminated against women. After satis-

fying certain administrative prerequisites, these claimants, on February 28, 1972, filed a complaint containing class action allegations in the United States District Court for the Western District of Pennsylvania. The plaintiffs alleged that Liberty committed sex discrimination in its claims department in hiring, promoting and compensating females.[2] In due course the district court certified the class [3] and found that Liberty's employment policy discriminated against female employees on the basis of sex.[4]

After considerable additional activity in the district court, the court of appeals and the Supreme Court,[5] the class action litigation was settled for an amount in excess of $5,500,000. In the September 20, 1978, Stipulation of Compromise and Settlement, the class was redefined to

> [I]nclude each of Defendant's [Liberty's] female technical employees who was employed in the Defendant's Claims Department anywhere in the United States as a Claims Representative, Claims Representative Supervisor or Supervising Claims Representative at any time between October 19, 1970, and January 8, 1974.

1. This court has jurisdiction of the present appeal from a final order and judgment of the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. § 1291. Subject matter jurisdiction over the controversy exists under 28 U.S.C. § 1332(a)(1).

2. Various opinions concerning this litigation have been reported. *Wetzel v. Liberty Mutual Ins. Co.*, 372 F.Supp. 1146 (W.D.Pa.1974), *aff'd in relevant part*, 508 F.2d 239 (3rd Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975), *pregnancy benefits issue aff'd*, 511 F.2d 199 (3rd Cir. 1975), *vacated and remanded*, 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976), *vacated district court order*, 579 F.2d 236 (3d Cir. 1977); cause of action under Equal Pay Act, 449 F.Supp. 397 (W.D.Pa.1978); statute of limitations issue, 451 F.Supp. 967 (W.D. Pa.1978).

3. The district court certified a class comprised of "all female technical employees in the Defendant's [Liberty's] Claims Department in the entire geographical area where the Company did business. The class as now defined includes all such employees who were hired or working for the Company in its Claims Department since July 2, 1965, the effective date of Title VII of 42 U.S.C. § 2000e *et seq.*, the Equal

Employment Opportunity Act of 1972." *Wetzel v. Liberty Mutual Insurance Co.*, 372 F.Supp. 1146, 1149 (W.D.Pa.1974). This class definition was affirmed on appeal except those employees whose claims were time barred by the statute of limitations contained in § 706(d) of title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(d), were excluded from the class. 508 F.2d 239, 246 (3d Cir. 1975). For subsequent case history *see* note 2 *supra.*

4. The gravamen of plaintiffs' complaint was that females were generally hired for the position of claims representative while the position of claims adjuster—with comparable duties but greater pay and superior opportunities for promotion—was filled with males. In addition, plaintiffs averred that Liberty's pregnancy leave policy and disability benefits policy were tainted by sex discrimination. On plaintiff's motion for summary judgment Liberty was unable to rebut these contentions and the district court found that Liberty had violated title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. *Wetzel v. Liberty Mutual Ins. Co.*, 372 F.Supp. 1146 (W.D.Pa.1974). For subsequent case history *see* note 2 *supra.*

5. *See* citations set forth in *note 2 supra.*

The terms of the settlement included a complicated scheme for distributing the proceeds of the settlement among the class members. For purposes of this proceeding all that need be noted is that the settlement compensated employees employed before August 1, 1971, for injuries allegedly sustained both before and after that date and compensated some employees who were hired after August 1, 1971.

### B.

From August 1, 1971, through August 1, 1974, Liberty was insured by Appalachian under an umbrella liability policy. The Appalachian policy was part of an umbrella insurance package which in participation with the underwriters at Lloyds of London covered Liberty for ultimate net loss up to $15,000,000 in excess of a $25,000 retention for each occurrence.

After Liberty settled the class action case in September of 1978, it claimed indemnification under the Appalachian policy. Appalachian filed the within suit on October 10, 1978, seeking a declaratory judgment that it was not liable to Liberty under that policy. Appalachian did not contend that its policy excluded claims based on sex discrimination. Instead it alleged that the occurrence of the loss and the impact from that occurrence took place prior to the effective date of its policy.[6] The parties filed cross-motions for summary judgment. The district court denied Liberty's motion for summary judgment and granted Appalachi-an's motion.[7] Liberty appeals from the grant of summary judgment contending that the district court erred in its resolution of the legal issue.

### II.

■ In granting summary judgment for Appalachian the district court relied on its characterization—one undisputed by the parties—of the Appalachian policy as an "occurrence" policy as distinguished from a "claims made" policy.[8] Under an "occurrence" policy the insured is indemnified for acts or occurrences which take place within the policy period while under a "claims made" policy the insured is indemnified for claims made during the policy period regardless of when the acts giving rise to those claims occurred. *St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 535 n.3, 98 S.Ct. 2923, 2926 n.3, 57 L.Ed.2d 932 (1978); *Brander v. Nabors*, 443 F.Supp. 764, 767 (N.D.Miss.), *aff'd. per curiam*, 579 F.2d 888 (5th Cir. 1978).

Based on the characterization of the Appalachian policy as an occurrence policy the district court had to determine whether there was a single occurrence or multiple occurrences for which Liberty sought indemnification and when the occurrence or occurrences took place. The district court held that Liberty's claim for indemnification was based on a single occurrence. It ruled that whether losses are caused by a single occurrence or multiple occurrences is

---

**6.** Appalachian also alleged in its complaint that Liberty's claim for indemnification was excluded under the terms of its policy because the injuries suffered by the class were the foreseeable result of Liberty's intentional and deliberate acts. The district court did not reach this issue and neither do we.

**7.** The district court's opinion is reported at 507 F.Supp. 59 (W.D.Pa.1981).

**8.** Because it was part of a package, the Appalachian policy adopted the terms and provisions of a certain underlying policy written by the underwriters at Lloyds of London. Under the policy Appalachian agreed to indemnify Liberty (subject to certain limitations) for

[A]ll sums which the Assured [Liberty] shall be obligated to pay by reason of the liability
(a) imposed upon the Assured by law.

. . . .
for damages on account of:—
  (i) Personal Injuries
  . . . .
caused by or arising out of each occurrence happening anywhere in the world.
The policy defined occurrence as
[A]n accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, property damage or advertising liability during the policy period. All such exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed one occurrence.

determined by reference to the cause of the loss. It found that a single occurrence took place in 1965 when Liberty adopted the employment policies which resulted in the imposition of liability for sex discrimination. The district court also looked to the date the cause of the loss took place to determine when the occurrence happened. "[I]t is the cause of the loss, and not the resulting injury that determines the incidents of liability under such policy." 507 F.Supp. at 62. Since the single occurrence took place before the effective date of the Appalachian policy the district court concluded that Appalachian was not liable to Liberty.

In so holding the district court rejected Liberty's contention that it was at least entitled to indemnification for damages paid to class members based on periods of employment after the Appalachian policy was in force. The district court said this contention could be sustained only if there were multiple occurrences. The district court observed that if there were multiple occurrences the $25,000 retention per occurrence would insulate the Appalachian policy from responding because no single class member received a distribution in excess of $25,000.[9] The district court relying on a single definition of "occurrence" in the policy, see note 8 *supra*, was unwilling to find, as Liberty urged it to do, multiple occurrences for the purpose of coverage but only a single occurrence for the purpose of applying the deductible retention.

### III.

On this appeal Liberty maintains that the district court erred in determining when the occurrence took place. Liberty acknowledges that the determination of whether an

occurrence is single or multiple properly depends on whether there is a single cause or multiple causes for the losses sustained. Liberty argues, however, that for the purpose of determining coverage under an "occurrence" policy an occurrence takes place not when the wrongful act is committed, but when the complaining party is actually damaged. Since the damages paid to female employees were in a number of instances based on periods of employment during which the Appalachian policy was in effect, Liberty urges that the occurrence did not precede the effective date of the policy and it is entitled to indemnification at the very least for damages calculated during the policy period.

Appalachian contends that the district court correctly resolved the legal issue because both the cause of the injuries and the injuries themselves began in 1965. It argues that the accrual of damages into the period covered by the Appalachian policy is insufficient to require that policy to respond.

### IV.

■ After considering the contentions of Liberty and Appalachian, we conclude that the judgment of the district court should be affirmed. Nevertheless, since our analysis of the issue presented by this appeal differs somewhat from that of the district court further explication is necessary.[10]

■ As the court below observed the Appalachian policy is of the "occurrence" variety because coverage is provided only when there is an occurrence within the policy period. The policy states that the insurer will indemnify Liberty for "all sums" which

---

**9.** Implicit in this conclusion is the district court's view that multiple occurrences mean that each employee's injury constitutes a separate occurrence.

**10.** A court sitting in diversity must apply the substantive law, including the choice of law rules, of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The district court found that under Pennsylvania's choice of law rules Massachusetts law governs this case.

*Appalachian Ins. Co. v. Liberty Mutual Ins. Corp.*, 507 F.Supp. 59, 61 (W.D.Pa.1981). We need not review that finding here because the principles we apply in this case are not limited to Massachusetts law. *Transamerica Ins. Co. v. Bellefonte Ins. Co.*, 490 F.Supp. 935, 936 (E.D.Pa.1980). Neither the parties nor the district court have identified any legal principles which under Massachusetts law determine the outcome of this case.

it "shall be obligated to pay by reason of the liability imposed upon [Liberty] by law ... for damages on account of:—(i) Personal Injuries ... caused by or arising out of each occurrence...." Although this language is sufficient for us to classify the policy as an "occurrence" policy our conclusion is reinforced by the fact that under the policy the deductible of $25,000 is applied on a per occurrence basis. *See Transport Ins. Co. v. Lee Way Motor Freight, Inc.*, 487 F.Supp. 1325, 1329 (N.D.Tex.1980).

In order to ascertain whether there was an occurrence within the policy period we must identify the occurrence and then determine when it took place.

■ The general rule is that an occurrence is determined by the cause or causes of the resulting injury. "[T]he majority of jurisdictions employes the 'cause theory'. [Citations omitted.] Using this analysis, the court asks if '[t]here was but one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damage.'" *Bartholomew v. Insurance Co. of N. America*, 502 F.Supp. 246, 251 (D.R.I. 1980), *aff'd. sub nom. Bartholomew v. Appalachian Ins. Co.*, 655 F.2d 27 (1st Cir. 1981), *citing Olsen v. Moore*, 56 Wis.2d 340, 202 N.W.2d 236 (1972); *Transport Ins. Co. v. Lee Way Motor Freight, Inc.*, 487 F.Supp. 1325, 1330 (N.D.Tex.1980); *contra, Elston-Richards Storage Co. v. Indemnity Ins. Co. of N. America*, 194 F.Supp. 673, 682 (W.D. Mich.1960), *aff'd.*, 291 F.2d 627 (6th Cir. 1961).

■ Applying the general rule to the facts of this case we agree with the district court's finding that there was but one occurrence for purposes of policy coverage.[11] The injuries for which Liberty was liable all resulted from a common source: Liberty's discriminatory employment policies. Therefore, the single occurrence, for purposes of policy coverage, should be defined as Liberty's adoption of its discriminatory employment policies in 1965.

The fact that there were multiple injuries and that they were of different magnitudes and that injuries extended over a period of time does not alter our conclusion that there was a single occurrence. As long as the injuries stem from one proximate cause there is a single occurrence. *Champion Int'l. Corp. v. Continental Casualty Co.*, 546 F.2d 502, 505–506 (2d Cir. 1976), *cert. denied*, 434 U.S. 819, 98 S.Ct. 59, 54 L.Ed.2d 75 (1977). Indeed, the definition of the term "occurrence" in the Appalachian policy contemplates that one occurrence may have multiple and disparate impacts on individuals and that injuries may extend over a period of time.[12]

We now reach the crucial issue of determining when the single occurrence took place because only if it took place within the policy period is Appalachian required to indemnify Liberty.

The district court concluded that the occurrence took place in 1965 when Liberty adopted its discriminatory employment policies. It placed the occurrence at that point by applying the same "cause" test it used in determining whether there was a single occurrence or multiple occurrences. Since the employment policies caused the resulting injuries to Liberty's employees the district court reasoned that the occurrence took place when the employment policies were adopted.

■ While the "cause" test is appropriate for determining whether there is a single occurrence or multiple occurrences, it is not applicable in determining when an occurrence takes place. We hold that the determination of when an occurrence happens must be made by reference to the time when the injurious effects of the occurrence

---

11. Because there was one occurrence the deductible retention of $25,000 would be applicable only once and not to the separate claims of each class member, none of which exceeded $25,000.

12. *See* note 8 *supra. See Southern Int'l. Corp. v. Poly-Urethane Indus., Inc.*, 353 So.2d 646 (Fla.App.1977).

took place. "There can be no question but that the aspect of the occurrence which must take place within the policy period ... is the 'result,' that is, the time when the accident or injurious exposure produces personal injury." *Eagle-Picher Indus., Inc. v. Liberty Mutual Ins. Co.*, 523 F.Supp. 110, 114 (D.Mass.1981); *Deodato v. Hartford Ins. Co.*, 143 N.J.Super. 396, 363 A.2d 361, 365 (Law Div. 1976); *Peerless Inc. Co. v. Clough*, 105 N.H. 76, 193 A.2d 444, 446 (1963).

Our adoption of the "effect" test for determining when the occurrence took place is dictated by the reasonable expectations of the insured in purchasing a policy of this type. *Keene v. Insurance Co. of N. America*, 667 F.2d 1034, at 1042 & n.12 (D.C.Cir. 1981), *petition for cert. filed*, —— U.S. ——, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1981). Liberty could reasonably expect that it would be indemnified for damages paid on account of liability incurred during the policy period. Since injury is a prerequisite to liability, Liberty reasonably expected to be indemnified for injuries occurring during the policy period. The expectation is evident in the language of the policy which specifically defines occurrence as something that results in injuries during the policy period.[13]

Application of the "effect" test to the instant case is not easy.[14] The "effect" test requires us to determine whether the injurious effects of Liberty's 1965 employment policies—the occurrence as previously defined—took place during the policy period. The problem here is that the injurious effects of Liberty's 1965 employment policies began immediately upon their adoption and continued at least to some extent into the period of coverage provided by the Appalachian policy.[15]

■■ We hold that in this type of a case the occurrence takes place when the injuries first manifest themselves. *Bartholomew v. Insurance Co. of N. America*, 502 F.Supp. 246, 254 (D.R.I.1980), *aff'd. sub nom. Bartholomew v. Appalachian Ins. Co.*,

---

**13.** *See* note 8 *supra.*

**14.** This is not a case where an insured commits a tortious act and then after a lapse of time a claimant is injured by that act. *See Travelers Ins. Co. v. C. J. Gayfer's & Co.*, 366 So.2d 1199 (Fla.App.1979) (no coverage under contractor's policy where contractor installed roof during policy period but roof leaked after expiration of policy). Here, Liberty's policy of sex discrimination had an immediate impact on its female employees in the claims department. Nor is this case akin to the litigation involving coverage of defendants involved in the asbestos litigation. In those cases it is not at all clear when the alleged tortious acts of the defendants first impacted on the health of a victim of asbestosis. *See Keene v. Insurance Co. of N. America*, 667 F.2d 1034 (D.C.Cir.1981), *petition for cert. filed*, —— U.S. ——, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1981); *Porter v. American Optical Corp.*, 641 F.2d 1128 (5th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981); *Insurance Co. of N. America v. Forty-Eight Insulations, Inc.*, 633 F.2d 1212 (6th Cir. 1980), *aff'd on rehearing*, 657 F.2d 814 (1981), *cert. denied*, —— U.S. ——, 102 S.Ct.

686, 70 L.Ed.2d 650 (1981). We do not even speculate as to how the principles applied in this case would apply, if at all, to cases of those types.

**15.** At oral argument, Appalachian's counsel, apparently relying on statements made in some of the Wetzel cases that the discriminatory policies had ended in 1971, *see Wetzel v. Liberty Mutual Ins. Co.*, 372 F.Supp. 1146, 1163 (W.D.Pa.1974), *aff'd.*, 508 F.2d 239, 244 (3rd Cir. 1975) and *Wetzel v. Liberty Mutual Ins. Co.*, 449 F.Supp. 397, 399 (W.D.Pa.1978), asserted that all of the injurious effects from those policies had ended before August 1, 1971. If that assertion were correct the coverage issue could easily be resolved against Liberty. It is not clear, however, when in 1971 the discriminatory policies ended. Moreover, our review of the record reveals that some injurious effects from the discriminatory policies continued into the period of coverage provided by the Appalachian policy. The damage formula contained in the Stipulation of Compromise and Settlement, for example, is one indication that injurious effects continued into the period of coverage provided by the Appalachian policy. *See* text following note 5 *supra.*

655 F.2d 27 (1st Cir. 1981). In *Bartholomew* injuries to the plaintiff continued throughout a number of different policy periods but the court held that only the policy in effect when the injuries first manifested themselves had to respond.[16] Since the injuries to Liberty's employees occurred immediately upon the promulgation of Liberty's discriminatory employment policies the occurrence took place for purposes of coverage before August 1, 1971.[17] Appalachian need not indemnify Liberty because the occurrence preceded the effective date of the insurance policy.

A contrary result in this case would contravene the rule that an insured cannot insure against something which has already begun. *Bartholomew v. Appalachian Ins. Co.*, 655 F.2d 27, 29 (1st Cir. 1981); *see Summers v. Harris*, 573 F.2d 869, 872 (5th Cir. 1978). The rule is based on the realization that the purpose of insurance is to protect insureds against unknown risks. When the Appalachian policy became effective, however, the risk of liability was no longer unknown because injuries resulted immediately upon Liberty's promulgation of its discriminatory policies. Also, the complaint to the EEOC preceded the effective date of the Appalachian policy.

For the foregoing reasons the judgment of the district court will be affirmed.

---

**16.** Our decision to follow the reasoning of the *Bartholomew* case is reinforced by other cases holding that when an injury manifests itself during a policy period the insurer remains liable after the expiration of the policy for the entire loss. *E.g., Harmon v. American Casualty Co.*, 155 F.Supp. 612, 613–14 (S.D.Cal.1957).

**17.** The fact that under the Stipulation of Compromise and Settlement some class members who received damage awards did not begin their employment with Liberty until after August 1, 1971, is immaterial. Once we established there was but one occurrence it either took place before or after the effective date of the policy. To recover for damages accrued after August 1, 1971, Liberty would have to establish there were multiple occurrences which it did not attempt to do nor could it do under our analysis.