MICHIGAN MILLERS MUTUAL INSURANCE COMPANY v
NORTH AMERICAN REINSURANCE CORPORATION

Docket No. 108919. Submitted January 17, 1990, at Lansing. Decided
February 21, 1990.

Transcriptions, Ltd., purchased an insurance policy from Michigan Millers Mutual Insurance Company which provided umbrella coverage up to $1,000,000 after the underlying limit of $300,000 was exhausted. Transcriptions had an underlying policy with its primary insurer, Insurance Company of North America (INA), but that policy provided only $100,000 of primary coverage. Michigan Millers obtained a separate policy of reinsurance from North American Reinsurance Corporation which provided that North American agreed to insure Michigan Millers for ninety-five percent of Michigan Millers' liability under the umbrella policy issued to Transcriptions. A personal injury action was filed against Transcriptions, and it wasn't until then that it was discovered that Transcriptions' primary coverage had a $100,000 limit. The lawsuit was settled for $240,000. INA, Transcriptions' primary insurer, paid its liability limit of $100,000; Utica Mutual, the errors and omissions carrier for the insurance agency which sold the policies to Transcriptions, paid $100,000; Transcriptions itself paid $15,000; and Michigan Millers paid $25,000. Michigan Millers then filed suit in Ingham Circuit Court seeking reimbursement from North American of ninety-five percent of the $25,000 principal amount it paid plus certain expenses, premising North American's liability on the theory that Michigan Millers agreed to settle below the $300,000 limit in order to extinguish possible liability above that limit if the case had gone to trial. The court, James T. Kallman, J., granted summary disposition in favor of North American, finding that, regardless of the potential, the umbrella policy did not cover losses below $300,000. Michigan Millers appealed.

The Court of Appeals *held:*

North American's liability to Michigan Millers is premised in

REFERENCES

Am Jur 2d, Insurance §§ 1836, 1839, 1840, 1841.
See the Index to Annotations under Reinsurance.

turn upon Michigan Millers' liability to Transcriptions under the umbrella policy. Michigan Millers had no liability under the umbrella policy since that policy did not cover losses below $300,000, and it is not entitled to indemnity from North American even though it made a $25,000 payment, ostensibly to prevent a possibly higher damages award which might have occurred if the lawsuit had gone to trial. Therefore, because Michigan Millers was not legally liable to Transcriptions under the umbrella policy and because there is no independent agreement or policy provision binding North American to a settlement payment made outside the umbrella policy, North American is not required to reimburse Michigan Millers for its settlement contribution.

Affirmed.

1. INSURANCE — REINSURANCE.

A contract of reinsurance is one whereby one insurer for a consideration contracts with another to indemnify it against loss or liability by reason of a risk which the latter has assumed under a separate and distinct contract as the insurer of a third person.

2. INSURANCE — REINSURANCE.

There are two basic types of reinsurance: (1) facultative, where the initial insurer seeks to place reinsurance in order to spread the risk involved with large policy exposures, and (2) treaty, where the reinsurer and the reinsured enter into a contract whereby the reinsurer provides reinsurance on all policies underwritten by the reinsured in a specified percentage either on all or specified classes of the reinsured's business.

3. INSURANCE — REINSURANCE.

The extent of the liability of a reinsurer is determined by the language of the reinsurance contract, and the reinsurer cannot be held liable beyond the terms of its contract merely because the original insurer has sustained a loss; if it appears that no liability has attached against the insurer under the original contract, there can be no recovery against the reinsurer, for nothing exists upon which to base an indemnity; the fact that the original insurer has paid a claim does not establish that it is entitled to indemnity from the reinsurer, for the claim might have been one for which the insurer was not bound to make payment.

*Willingham & Coté, P.C.* (by *John A. Yeager*), for plaintiff.

*Foster, Swift, Collins & Smith, P.C.* (by *Scott A. Storey*), for defendant.

Before: SHEPHERD, P.J., and MAHER and SULLIVAN, JJ.

PER CURIAM. Plaintiff appeals as of right from a circuit court order granting defendant's motion for summary disposition pursuant to MCR 2.116(C)(10). We affirm.

This case involves a liability dispute between insurance companies under a policy of reinsurance. The dispute arose following the settlement of an underlying action brought against plaintiff's insured, Transcriptions, Ltd. Plaintiff provided Transcriptions with a $1 million umbrella policy in which Transcriptions was required to maintain $300,000 of underlying coverage. Under the terms of the umbrella policy, plaintiff agreed to provide additional coverage up to $1 million after the underlying limit of $300,000 was exhausted. Plaintiff then obtained a separate policy of reinsurance from defendant, whereby defendant agreed to insure plaintiff for ninety-five percent of plaintiff's liability under the umbrella policy issued to Transcriptions.

After a personal injury action was filed against Transcriptions, it was discovered that Transcriptions' underlying policy with its primary insurer, Insurance Company of North America (INA), provided for only $100,000 of primary coverage. It was unclear who was responsible for the $200,000 gap in coverage. Theories advanced in the lower court attributed the error to either the Feldman Agency, which sold the policies, or to plaintiff, which had formerly acted as Transcriptions' primary insurer pursuant to a $100,000 policy. Plaintiff, incidentally, was also the secondary errors and omissions insurance carrier for the Feldman Agency.

The underlying lawsuit against Transcriptions was settled for $240,000. Towards this amount, Transcriptions' primary insurer, INA, contributed their policy limit of $100,000; Utica Mutual, the errors and omissions carrier for the Feldman Agency, contributed another $100,000; Transcriptions contributed $15,000 from its own funds; and plaintiff contributed the final $25,000. Plaintiff then sought from defendant reimbursement of the $25,000 principal amount and certain expenses, premising defendant's liability on the contract of reinsurance. After defendant denied plaintiff's claim, plaintiff commenced the instant action. After both parties filed cross motions for summary disposition, the trial court granted defendant's motion, and plaintiff now appeals as of right.

A contract of reinsurance has been defined as a contract whereby one insurer for a consideration contracts with another to indemnify it against loss or liability by reason of a risk which the latter has assumed under a separate and distinct contract as the insurer of a third person. 13A Appleman, Insurance Law & Practice, § 7693, p 523.

There are two basic types of reinsurance. Facultative reinsurance is where the initial insurer seeks to place reinsurance in order to spread the risk involved with large policy exposures. Treaty reinsurance is where the reinsurer and the reinsured enter into a contract whereby the reinsurer provides reinsurance on all policies underwritten by the reinsured in a specified percentage either on all or on specified classes of the reinsured's business. 19 Couch on Insurance 2d, § 80.3, p 626. The type of reinsurance involved in this case is facultative reinsurance.

The general rule governing the liability of a reinsurer to its reinsured is discussed in 19 Couch on Insurance 2d, § 80.66, pp 673-674:

The extent of the liability of the reinsurer is determined by the language of the reinsurance contract, and the reinsurer cannot be held liable beyond the terms of its contract merely because the original insurer has sustained a loss.

* * *

If it appears that no liability has attached against the insurer under the original contract, there can be no recovery against the reinsurer, for nothing exists upon which to base an indemnity.

The fact that the original insurer has paid a claim does not establish that it is entitled to indemnity from the reinsurer, for the claim might have been one for which the insurer was not bound to make payment.

The contract of reinsurance involved in this case provides:

The liability of the Reinsurer shall follow the terms and conditions of the Company's policy [umbrella policy] furnished to the Reinsurer at the effective date of this Reinsurance Certificate . . . .

Thus, defendant's liability to plaintiff is premised in turn upon plaintiff's liability to Transcriptions *under the umbrella policy.* If plaintiff has no liability under the umbrella policy, then it is not entitled to indemnity from defendant even though it may have made a payment.

The trial court determined that the umbrella policy did not cover losses below $300,000 and, therefore, defendant was not responsible for reimbursement to plaintiff. We agree.

We cannot accept plaintiff's first argument that its settlement payment was authorized pursuant to an expediency settlement clause in the umbrella policy. Although the clause plaintiff refers to authorizes an insurer to make such investigation and settlement of any claim as it deems expedient, the

expediency settlement clause in the umbrella policy is expressly made applicable only where underlying insurance does not apply. In this case, underlying insurance did exist and, pursuant to the terms of the policy, plaintiff had no liability for losses falling below $300,000. Indeed, when underlying insurance is applicable, the umbrella policy provides:

> In the event that the limits of liability of the underlying insurance listed in the Schedule of Underlying Insurance Policies are exhausted by an occurrence, the Company shall be obligated to assume charge of the settlement or defense of any claim or proceeding against the insured resulting from the same occurrence, *but only where this policy applies and is immediately in excess of such listed underlying insurance without intervening excess insurance with another insurer.* [Emphasis added.]

Under this language, plaintiff's settlement authority commences only when a claim exceeds the $300,000 limit contained in the umbrella policy.

Although there are no cases on point in Michigan, we are unable to conclude that Transcriptions' failure to secure $200,000 of underlying coverage has the effect of exposing plaintiff to liability under the umbrella policy for losses below the $300,000 limit. The umbrella policy is an excess policy that does not "kick in" until primary coverage in the amount of $300,000 is first exhausted. Holding plaintiff liable under the umbrella policy for a loss below the $300,000 limit, merely because its own insured failed to secure adequate primary coverage, would effectively require us to rewrite the policy. Plaintiff has not provided us with any authority holding that an excess carrier may be liable on an excess policy in

a situation such as this when its insured fails to procure adequate primary coverage as required by the policy. Indeed, in *Whitehead v Fleet Towing Co,* 110 Ill App 3d 759, 765; 442 NE2d 1362 (1982), it was held that, where an insured failed to secure any primary coverage whatsoever, the excess carrier was relieved from liability on its excess insurance policy altogether. Accordingly, because the settlement amount was less than the limit at which the excess coverage became applicable, we find that plaintiff was not liable to its insured under the umbrella policy.

In support of its contention that it is entitled to reimbursement, plaintiff also relies upon the following language from the reinsurance contract:

> F. LOSS PAYABLE. All insurance policy *claims involving this reinsurance,* when settled by the company, shall be binding upon the reinsurer, which shall be bound to pay its proportion of such settlements promptly following receipt of proof of loss in the following manner . . . . [Emphasis added.]

As indicated by the emphasized language, only the settlement of claims involving the reinsurance contract is binding on defendant. The reinsurance contract insures plaintiff only for liability arising from the umbrella policy issued to plaintiff's insured. Accordingly, plaintiff does not have a claim involving the reinsurance contract until it first becomes liable under the umbrella policy. As previously indicated, this did not occur. Therefore, the loss payable clause cannot support plaintiff's claim for recovery.

Finally, plaintiff maintains that, although it contributed to a settlement that was less than the $300,000 limit, it agreed to do so in order to avoid exposure to a potentially larger jury verdict and

excessive litigation costs. Plaintiff argues that because public policy favors the settlement of cases, and because the reinsurance contract does not expressly exclude an expediency settlement, defendant should be required to contribute to such a settlement. On the contrary, defendant argues that public policy does not favor imposing liability on a reinsurer when underlying limits of an excess policy have not been met. Defendant maintains that an imposition of liability in such an instance would expose the reinsurer to greater risks than originally bargained for and would encourage underlying insurers to demand contributions from excess insurers when the limits of primary coverage have not been exhausted.

Although we acknowledge the existence of competing policy interests, we decline to impose liability on the reinsurer of an excess policy where, as in this case, the reinsured contributes to a settlement below the underlying limits of excess coverage. Defendant in this case was provided with a copy of the umbrella policy and obviously based its premium rates for the reinsurance coverage upon the extent of the risk it was assuming. Because the umbrella policy was an excess policy purporting to cover losses only to the extent they exceeded $300,000, defendant's risk was substantially less than what it would otherwise have been if it were insuring a primary policy. Requiring defendant to indemnify its reinsured for contributions to a settlement below the underlying limits of excess coverage would indeed expose defendant to greater risks than were contracted for.

Although it is true that parties may agree to such terms in reinsurance as will bind the reinsurer to the settlement or adjustment of loss made between the parties to the original insurance, 19 Couch on Insurance 2d, § 80.13, p 631, we will not

impose liability on the reinsurer for a settlement contribution absent such an agreement. Here, there was no agreement or policy provision whereby defendant agreed to insure plaintiff for payments made in settlement of a claim below the limits of underlying coverage.

Other jurisdictions have similarly held that, where a reinsured is not legally liable to its own insured on the underlying policy, liability may not be imposed on the reinsurer to pay under its contract of reinsurance. In *Independence Ins Co v Republic National Life Ins Co,* 447 SW2d 462 (Tex Civ App, 1969), the reinsured paid the face amount of an underlying life insurance policy even though the policy had lapsed for failure to pay premiums. The court held that, because the reinsured was not legally liable to pay the policy, the reinsurer was not liable to pay anything under its contract of reinsurance. 447 SW2d 468. Further, in *American Ins Co v North American Co For Property & Casualty Ins,* 697 F2d 79, 81 (CA 2, 1982), it was held that a clause providing that "[a]ll claims involving this reinsurance, when settled by the company, shall be binding on the reinsurer" could not impose liability on the reinsurer for a settlement payment made by the reinsured that was beyond the scope of the policy insured against.

Therefore, because plaintiff was not legally liable to its own insured under the umbrella policy and because there is no independent agreement or policy provision binding defendant to a settlement payment made outside the umbrella policy, we conclude that defendant is not required to reimburse plaintiff for its settlement contribution. Accordingly, the trial court did not err in granting defendant's motion for summary disposition.

Affirmed.