### INTERNATIONAL SURPLUS LINES INSURANCE COMPANY, Plaintiff

v.

**CERTAIN UNDERWRITERS AND UNDERWRITING SYNDICATES AT LLOYD'S OF LONDON, Subscribing to Lloyd's Policy Nos. 614/NC 8097; 614/NC 8098; 614/NC 8100; 614/NC 8101; 614/NTA 208; 614/NTA 209; 614/NTA 210; 614/NTA 211; 614/NTA 662; 614/NTA 663; 614/NTA 664; 614/NTA 665; 614/NTB 086; 614/NTB 087; 614/NTB 088; 614/NTB 089; Abeille–Paix Reassurances; Allianz International Insurance Company Ltd; Banco De Seguros Del Estado; Beacon Insurance Company; Bermuda Fire & Marine Insurance Company Ltd; British National Life Insurance Society Ltd; Brittany Insurance Company Ltd; Bryanston Insurance Company Ltd; Caja Nacional De Ahorro Y Seguro; CNA Reinsurance of London Ltd; Compagnie D'Assurances Industrielles; Dominion Insurance Company Ltd; Folksam International Insurance Company (UK) Ltd; Grupo De Empresas Seguradora Brasileiras; Heddington Insurance**

Company (UK) Ltd; Inder Instituto Nacional De Reaseguros; Instituto De Reasseguros Do Brasil; Lexington Insurance Company; Ludgate Insurance Company Ltd; Nissan Fire & Marine Insurance Company Ltd; North Atlantic Insurance Company Ltd; Pacific & General Insurance Company Ltd; Scottish & Commonwealth Insurance Company Ltd; Sovereign Marine & General Insurance Company Ltd; St. Katherine Ins. Co.; Storebrand Insurance Company (UK) Ltd; Stronghold Insurance Company Ltd; Tiasho Marine & Fire Insurance Company (UK) Ltd; Terra Nova Insurance Company Ltd; Tokio Marine & Fire Insurance Company (UK) Ltd; Union Atlantique D'Assurances S A; Vera Cruz Seguradora S A; Winterhur Swiss Insurance Company; Yasuda Fire & Marine Insurance Company (UK) Ltd; La Fonciere Compagnie D'Assurances Et Reassurances Transports; Compagnie Europeene D'Assurances Industrielles, Defendants.

No. C2–92–829.

United States District Court,
S.D. Ohio,
Eastern Division.

Sept. 27, 1994.

See also, 868 F.Supp. 923.

Michael Proctor Graney, Simpson Thacher & Bartlett, Columbus, OH, for plaintiff.

Mark E. Defossez, Reminger, Reminger, Hunter & Enders, Columbus, OH, Wendy B. Millman, Mendes & Mount; Leonard A. Sheft, Sheft & Sheft, New York City, Douglas Michael Kennedy, Roetzel & Andress, Columbus, OH, and Gerald A. Greenberger, Sheft & Sheft, Jersey City, NJ, for defendants.

## OPINION and ORDER

BECKWITH, District Judge.

This matter is before the Court on Plaintiff's motion for summary judgment. This order considers whether several reinsurers must reimburse their reinsured, the International Surplus Lines Insurance Company ("ISLIC") for losses it incurred when the Owens–Corning Fiberglass Company ("Owens–Corning") was confronted with hundreds of millions of dollars in asbestos-related claims. ISLIC filed this diversity action in this Court on September 15, 1992, seeking a declaratory judgment forcing the reinsurers to pay their share of the asbestos-related losses.

The Court has carefully studied the unnecessarily voluminous briefs filed in this matter, and concludes that Plaintiff's motion is well taken.

### Background

From 1979 through September 1, 1983, Owens–Corning purchased several layers of liability insurance. The first layer, an umbrella policy, provided coverage in each of the four years in the amount of $25 million for each "occurrence." One endorsement found in those policies provided that the policy limits were subject to a $1 million deductible, payable by Owens–Corning for "each and every occurrence." *See* Endorsement No. 4 of Northbrook Ins. Co. Umbrella Policy # 63 006 019, at definition VI.

The umbrella policies each contained a similar definition of the term "occurrence." For example, the 1979–1982 policy defined the term as

> [A]n accident, event or happening including continuous or repeated exposure to conditions which results, during the policy period, in personal injury.... All such personal injury ... caused by one event or by continuous or repeated exposure to substantially the same conditions shall be deemed to result from one occurrence.

ISLIC provided Owens–Corning with excess liability coverage above the umbrella policies. ISLIC's excess liability policy was structured in layers to cover each of the four years insured by the umbrella policies. ISLIC was obligated to provide all or part of the excess liability incurred in each layer. In total, ISLIC issued sixteen excess policies providing a $410 million liability limit. In each of the excess policies, ISLIC incorporated by reference the definition of occurrence set forth in the umbrella policies.

To reduce its potential risk, ISLIC purchased reinsurance from the Defendant foreign reinsurance companies and others. Each of the reinsurers agreed to reinsure a proportionate share of ISLIC's risk under one or more of the policies in exchange for a share of the premium collected by ISLIC from Owens–Corning. Collectively, the reinsurers provided $255 million of coverage. Thus, a little more than half of ISLIC's $410 million excess liability was covered by reinsurance contracts. Those reinsurance contracts provide that the reinsurers will indemnify ISLIC against all loss, damage or liability after such loss is proved.

Owens–Corning, ISLIC's insured, is an Ohio corporation that was in the business of manufacturing, distributing, and selling insulation products containing asbestos. The company was confronted with over 85,300 personal injury claims asserting asbestos-related injuries by December, 1992. In February 1992, Owens–Corning began presenting many of these asbestos claims to ISLIC for payment. When it submitted the bills to ISLIC, Owens–Corning took the position that the asbestos claims against it arose from one occurrence—the decision to manufacture and sell products containing asbestos.

ISLIC accepted Owens–Corning's position, and began making payments on a single occurrence basis. Thus, Owens–Corning paid ISLIC only a single $1 million "per occurrence" deductible in each of the four annual policy periods. To date, ISLIC has paid Owens–Corning more than $400 million under these policies.

When ISLIC sent bills to its various reinsurers for payment of their share of the losses, the Defendant reinsurers refused to pay. The Defendant reinsurers challenged ISLIC's acceptance of Owens–Corning's single occurrence position. They assert that each asbestos claim by each individual claimant must be treated as a separate occurrence, subject to a separate $1 million deductible. The reinsurers contend that the umbrella policies serving as a basis for ISLIC's excess coverage contemplate "multiple occurrences," rather than single occurrences. Further, the Defendant reinsurers point to other Owens–Corning policies that contemplate multiple occurrences. Finally, the Defendant reinsurers contend that because Owens–Corning is a signatory to the Wellington Agreement, ISLIC may have unreasonably committed itself to the single occurrence position set forth in that agreement.

Faced with nonpayment of several million dollars, Plaintiff ISLIC initiated this action. Following several protracted discovery and

procedural disputes, ISLIC filed the instant motion for summary judgment.

### Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides:

[Summary judgment] ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The purpose of a summary judgment motion is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir.1978).

In 1986, the United States Supreme Court issued three decisions which gave new life to Rule 56 as a mechanism for weeding out certain claims at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). It is well recognized that these cases brought about a "new era" in summary judgment practice. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir.1989). The three opinions by the Supreme Court reflect a return to the original purpose of the summary judgment motion. *Id.*

Accordingly, the summary judgment "standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–8, 106 S.Ct. at 2510 (emphasis in original). Moreover, when a party cannot establish the existence of an element essential to that party's case on which the party will have the burden of proof at trial, the Court must enter summary judgment against that party, pursuant to Rule 56. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. Thus, in order to survive a motion for summary judgment,

[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial.*"

*Matsushita*, 475 U.S. at 586–775, 106 S.Ct. at 1356. (emphasis in the original) (Footnote and citations omitted).

Rule 56(e) of the Federal Rules of Civil Procedure provides:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment if appropriate, shall be entered against the adverse party.

Accordingly, mere allegations are not sufficient to defeat summary judgment. The Court can now apply this standard to the Defendants' motion for summary judgment.

### Analysis

It is commonly understood that reinsurers must "follow the fortunes" of their insured. This fact may be formally expressed in an agreement of reinsurance. Even if it is not, the "Follow the Fortunes" doctrine applied to all reinsurance contracts. *See Mentor Ins. Co. v. Norges Brannkasse*, 996 F.2d 506, 516 (2nd Cir.1993); *National American v. Certain Underwriters*, slip op. 91–4021 (C.D.Cal.1991); Henry T. Kramer, *The Nature of Reinsurance*, in *Reinsurance* 11–12 (R.W. Strain, ed. 1980).

■ Under the "follow the fortunes" doctrine, a reinsurer is required to indemnify for payments reasonably within the terms of the original policy, even if not technically covered by it. *See Unigard Security Ins.*

*Co. v. North River Ins. Co.,* 762 F.Supp. 566, 581 (S.D.N.Y.1991). A reinsurer cannot second guess the *good* faith liability determinations made by its reinsured, or the reinsured's good faith decision to waive defenses to which it may be entitled. *Christiania General Ins. v. Great American Ins.,* 979 F.2d 268, 280 (2nd Cir.1992). This doctrine requires reinsurers to reimburse the reinsured (or cedent) for payment of the settled claims so long as the payments were made reasonably and in good faith. *See Christiania General Ins. Corp. v. Great Am. Ins. Co.,* 979 F.2d 268, 280 (2nd Cir.1992). Accordingly, the Court must determine whether ISLIC acted reasonably and in good faith when it accepted Owens–Corning's position that the asbestos claims arose from a single occurrence.

This standard is purposefully low. Were the Court to conduct a de novo review of ISLIC's decision-making process, the foundation of the cedent-reinsurer relationship would be forever damaged. The goals of maximum coverage and settlement that have been long established would give way to a proliferation of litigation. Cedents faced with de novo review of their claims determinations would ultimately litigate every coverage issue before making any attempt at settlement. Such a consequence this Court will not abide.

The Court has, therefore, examined the state of the law concerning the number of occurrences issue as it existed when ISLIC accepted Owens–Corning's single occurrence position. The examination revealed that the state of the law was clear when ISLIC accepted Owens–Corning's single occurrence position. Accordingly, ISLIC's acceptance of Owens–Corning's single occurrence position was, in fact, reasonable.

First, the Defendant reinsurers' contention that calculation of the number of occurrences turns on the number of claims can quickly be disposed of. It is well settled that, in determining the number of occurrences for deductibles, the focus must be on "the underlying circumstances which resulted in the claim for damages" rather than on the number of persons injured or the items damaged. *Champion Int'l Corp. v. Continental Casual-*

*ty Co.,* 546 F.2d 502 (2nd Cir.1976), *cert. denied,* 434 U.S. 819, 98 S.Ct. 59, 54 L.Ed.2d 75 (1977). Furthermore, the Court notes that the language used in the umbrella policies refers to a per occurrence basis rather than a per claim basis. Surely, this choice of words indicates an intention not to gauge coverage on the basis of individuals sustaining asbestos-related injuries. Rather, the expressed intention is to focus on the underlying circumstances that resulted in the claim for damages. *See Id.* at 506; *see also Newmont Mines Ltd. v. Hanover Ins. Co.,* 784 F.2d 127, 135 (2nd Cir.1986). In short, because application of multiple deductibles would create virtually no coverage, any interpretation of the term "occurrence" as a per claim term would render the umbrella policies meaningless. Certainly, Owens–Corning's position was influenced by this fact, and it was not unreasonable for ISLIC to accept Owens–Corning's position that the term referred to a single "occurrence."

Indeed, several courts in this circuit and in Ohio specifically support this conclusion. In *Michigan Chemical Corp. v. American Home Assur. Co.,* 728 F.2d 374, 379 (6th Cir.1984), the Court of Appeals held that multiple claims in connection with contaminated livestock feed all arose from a single decision to distributed defective feed. Citing *Michigan Chemical,* an opinion from the Northern District of Ohio presumed that Ohio law was in accord with the vast majority of states and held that causation was the appropriate approach in which to construe the term "occurrence." *See Babcock v. Wilcox Co. v. Arkwright Boston Mfg. Ins. Co.,* 6 Mealey's Litigation Reports, 867 F.Supp. 573 (N.D.Ohio 1992). Finally, a 1988 decision from Hamilton County, Ohio addressed the number of occurrences issue in the asbestos context. That Court held that a manufacturers' corporate decision to manufacture and distribute asbestos-containing components constituted a single occurrence out of which the "asbestos injury claims arose." *See Morton Thiokol, Inc. v. Aetna Casualty and Surety Co.,* No. A–8603799 (Ham. Co. Dec. 12, 1988) *rev'd on other ground sub nom. Morton Int'l, Inc. v. Aetna Cas. Insur. Co.,* No. C–900283, 1991 WL 201651, 1991 Ohio

App. LEXIS 4657 (Ohio Ct.App. Oct. 2, 1991).[1]

Other circuits and states that have confronted the occurrence issue in the context of asbestos losses also follow the causation approach. In *Owens–Illinois, Inc. v. Aetna Casualty and Surety Co.,* 597 F.Supp. 1515 (D.D.C.1984), the court held that the insured's manufacture and sale of an asbestos-containing product was "the single occurrence triggering liability for asbestos-related injury." *Id.* at 1527. The court noted that "the allocation of rights and obligations established by the insurance policies would be undermined if [the insured's] coverage is subject to multiple deductibles" and that the "single occurrence interpretation maintains [the insured's] reasonable expectations." *Id.* at 1527–28.

Similarly, in *Owens–Illinois v. United Ins. Co.,* 264 N.J.Super. 460, 625 A.2d 1 (Ct.App. Div.1993), a suit involving the same manufacturer, the trial court rejected the defendants' argument that each claim was a separate occurrence and held that numerous asbestos bodily injury and property damage claims against the insured resulted from a single occurrence, namely the insured's manufacture and sale of a product containing asbestos. *Id.* at 21–23.

Several other cases reached similar results.[2] These precedents did not mark a sudden shift in the law. They are consistent with the long line of decisions holding that manufacture or sale of an allegedly defective product constitutes a single occurrence, regardless of the number of injured individuals.[3] This overwhelming weight of authority indicates that ISLIC's 1992 coverage decision must be deemed reasonable. ISLIC was under a contractual obligation to Owens–Corning to decide coverage issues in good faith, without regard to whether there was reinsurance for the loss. *See Motorists Mut. Ins. Co. v. Said,* 63 Ohio St.3d 690, 590 N.E.2d 1228, 1232 (1992); *see also American Fidelity and Cas. Co. v. Greyhound Corp.,* 258 F.2d 709, 711 (5th Cir.1958); *Unigard Security Ins. Co., Inc. v. North River Ins. Co.,* 762 F.Supp. 566 (S.D.N.Y.1991) *aff'd in part and rev'd in part on other grounds,* 4 F.3d 1049 (2nd Cir.1993).

In an attempt to defeat ISLIC's motion, and create a genuine triable issue of material fact, Defendants raise a series of arguments. First, the Defendant reinsurers speculate that ISLIC did not make its single occurrence coverage determination in 1992 because such a determination was preordained by ISLIC's execution of the Wellington Agreement.[4] However, the reinsurers have

1. Defendant reinsurers contest the validity of the above expressed holding by noting that the decision was later reversed. However, the language of the later opinion reveals that the appeal was not taken from the portion of the opinion that discusses the number of occurrences issue. Additionally, the later opinion in no way disturbs the finding that asbestos claims constitute a single occurrence. Finally, when ISLIC accepted Owens–Corning's single occurrence position, it only had the benefit of reviewing the first *Morton Thiokol* opinion. It was thus entirely reasonable for ISLIC to rely on the Hamilton County Court's holding when it accepted Owens–Corning's position.

2. *Colt Indus., Inc. v. Aetna Cas. Ins. Co.,* 1989 W.L. 147615, at 6 (E.D.Pa. Dec. 6, 1989); *Air Products and Chemicals, Inc. v. Hartford Accident & Indem. Co.,* 707 F.Supp. 762, 771–73 (E.D.Pa. 1989); *Stonewall Ins. Co. v. National Gypsum Co.,* 1992 WL 123144, 1992 U.S.Dist. LEXIS 7607 (S.D.N.Y. May 27, 1992).

3. *See e.g., Champion Int'l,* 546 F.2d 502 (2nd Cir.1976) (Insured's sale and subsequent distribution of defective panels to 1,400 claimants was a single occurrence); *Household Mfg., Inc.,* 1987 WL 6611, 1987 U.S.Dist. LEXIS 1008 (N.D.Ill. Feb. 11, 1987), (multiple deliveries of defective plumbing units constituted a single occurrence; *Bartholomew v. Insurance Co. of N.M.,* 502 F.Supp. 246, 251 (D.R.I.1980) (sale of defectively designed car wash unit, which caused multiple injuries of varying magnitude, was a single occurrence); *Union Carbide Corp. v. Travelers Indem. Co.,* 399 F.Supp. 12, 21 (W.D.Pa.1975) (insured's decision to allow a damaging substance to remain in manufacturing process was the single occurrence that caused "all the subsequent damages suffered by a great variety of firms and individuals at various stages in the subsequent stream of distribution."

4. The Wellington Agreement is an integrated settlement providing for the administration, defense, payment and disposition of asbestos-related bodily injury claims. Its purpose is to settle certain disputes regarding trigger of coverage and allocation of insurance proceeds.

not pointed to any provision in the Wellington Agreement that addresses the number of occurrences issue. Additionally, the reinsurers argue that summary judgment would be premature because they were allegedly deprived of an opportunity to conduct necessary discovery. This argument is simply a tiresome attempt by the reinsurers to relitigate their unsuccessful motions to extend discovery. This Court entered a discovery schedule providing the reinsurers with ample opportunity to take the discovery necessary to resolve this motion, and that discovery revealed that there is no genuine issue of material fact precluding summary judgment in favor of ISLIC.

The narrow issue presented by this motion is whether ISLIC's decision to pay insurance proceeds to Owens–Corning for asbestos claims on a single occurrence basis—rather than contest coverage based upon a position that each claim is a separate occurrence subject to a $1 million deductible—was reasonable. The relevant policy language, and overwhelming authority, indicates that ISLIC's determination to pay on a single occurrence basis was reasonable and is therefore binding on the reinsurers.

### Conclusion

For all the reasons set forth herein, Plaintiff's motion for summary judgment is **GRANTED.** The Court is aware that it must still determine the amount of security to be posted by Defendants under Ohio Rev. Code § 3901.18. A decision on this matter will be forthcoming.

**IT IS SO ORDERED.**