592 N.W.2d 760 (1999)
233 Mich. App. 422
Village of Thompsonville, Plaintiff, and
MICHIGAN TOWNSHIP PARTICIPATING PLAN, Intervening Plaintiff-Appellee/Cross-Appellant,
v.
FEDERAL INSURANCE COMPANY, Defendant-Appellant/Cross-Appellee.
Docket No. 187408.
Court of Appeals of Michigan.
Submitted August 11, 1999, at Detroit.
Decided January 19, 1999, at 9:05 a.m.
Released for Publication March 23, 1999.
*762 Welch, MacAlpine, Bahorski, Bieglecki & Farrell, P.C. by Timothy A. Bahorski, Mt. Clemens, for Michigan Township Participating Plan.
Wilson & Condit, LLP (by James D. Wilson), Detroit, for Federal Insurance Company.
Before: CORRIGAN, C.J., and MacKENZIE and R.P. GRIFFIN, JJ.
*761 R.P. GRIFFIN, J.[*]
Defendant Federal Insurance Company (FIC) appeals as of right from orders granting summary disposition in favor of intervening plaintiff Michigan Township Participating Plan (MTPP) on issues concerning a reinsurance contract. One order found FIC liable to indemnify MTPP under the contract, and a second order fixed MTPP's recovery from FIC at $91,500 plus interest. FIC also appeals the imposition of sanctions for bringing a motion for reconsideration. On cross appeal, MTPP argued that the trial court erred in refusing to award penalty interest pursuant to the Uniform Trade Practices Act, *763 M.C.L. § 500.2006; MSA 24.12006. We affirm in part, reverse in part, and remand.
In March 1991, a fire destroyed an old schoolhouse, sometimes used as a community center, owned by the Village of Thompsonville. The village was a participating member of MTPP, a group self-insurance pool formed by intergovernmental contract pursuant to M.C.L. § 124.5; MSA 5.4085(6.5). An insurance policy issued by MTPP protected the village against fire loss with respect to particular buildings. Under this policy, the liability of MTPP with respect to the old schoolhouse was limited to $181,500 for the structure, and $10,000 for the contents. However, MTPP, the primary insurer, had ceded risk related to the insured buildings by entering into two reinsurance contracts: one with American Commercial Liability Insurance Company (ACLIC), which assumed the first $100,000 of risk, and a second reinsurance contract with FIC to cover risk in excess of $100,000 but limited to $5 million.
After the fire, ACLIC filed a declaratory judgment action against Thompsonville, seeking to avoid liability under a clause in the primary policy that excluded coverage if, at the time of the fire, the building was "vacant," as that term is defined in the policy. Thompsonville then filed a countercomplaint against ACLIC and a third-party complaint against FIC. While these actions were pending, ACLIC went into receivership and in due course its suit against Thompsonville was dismissed for lack of progress. MTPP delivered to its insured, Thompsonville, a series of payments that eventually totaled $191,500, amounting to a settlement of Thompsonville's claim at the limits of its policy with MTPP. Thompsonville then was dismissed from the lawsuit as an inappropriate party, and the court allowed MTPP to intervene as plaintiff.
Thereafter, the two remaining parties, MTPP, the primary insurer, and FIC, a reinsurer, filed motions for summary disposition. The circuit court ruled that the former schoolhouse was covered despite an address mistake in the primary policy, that the building was not vacant within the policy's terms when the fire occurred, and that FIC was liable for indemnification under its reinsurance contract with MTPP. However, the court left to the parties an opportunity to negotiate a settlement concerning the appropriate amount of indemnification. When negotiations failed, MTPP moved again for summary disposition.
In announcing its decision regarding the issue of damages, the court remarked from the bench that MTPP "probably put up too much money on this claim. How much too much, I don't know off the top of my head." However, the court then stated that, "as the linchpin" of its decision, it would apply the "follow the fortunes" doctrine which, the court explained, requires the "reinsurer to reimburse the insured for payment of settled claims so long as the payments were reasonably made in good faith." The court declared that judgment would be for MTPP in the sum of $91,500, the full amount by which its payments to Thompsonville exceeded $100,000, plus interest. A motion for reconsideration filed by FIC was denied, and the court ordered FIC to pay MTPP $250 as a sanction for bringing the motion.

I
As a preliminary matter, we focus first on a question of some significance that springs from the lower court's adoption and application of a so-called "follow the fortunes" doctrine as its basis for determining the amount of indemnification owed by the reinsurer, FIC. Indeed, the question was succinctly framed from the bench by the court itself in these terms, "[D]oes Michigan law impose a Follow-the-Fortunes doctrine when there is no express provision in the contract adopting such[?]"
Insurance companies enter into reinsurance agreements "[i]n order to spread the risks on policies they have written or to reduce required reserves." Colonial American Life Ins. Co. v. Comm'r of Internal Revenue, 491 U.S. 244, 246, 109 S.Ct. 2408, 105 L.Ed.2d 199 (1989). As this Court has earlier observed, a reinsurance contract is an arrangement "whereby one insurer for a consideration contracts with another to indemnify it against loss or liability by reason of a risk which the latter has assumed under a separate and distinct contract as the insurer *764 of a third person." Michigan Millers Mut. Ins. Co. v. North American Reinsurance Corp., 182 Mich.App. 410, 413, 452 N.W.2d 841 (1990), citing 13A Appleman, Insurance Law & Practice, § 7693, p. 523.
When an insurer decides to transfer some of the risk it has undertaken in a policy, the insurer "cedes" a portion of the risk to another insurance company, which is the reinsurer. Christiania General Ins. Corp. of New York v. Great American Ins. Co., 979 F.2d 268, 271 (C.A.2, 1992). "A reinsurance contract is a contract of indemnity." 1 Couch, Insurance, 3d, § 9:9, p. 9-17. The reinsurer's obligation to indemnify the ceding insurer "depends on the terms of the policy of reinsurance, and not on the question whether the insured suffered a legal loss on the original policy." Appleman, § 7692, p. 519. "If it appears that no liability has attached against the original insurer, there can be no recovery against the reinsurer, for nothing exists upon which to base an indemnity." Couch, § 9:22, p. 9-31. "Nor does the fact that the original insurer has paid a claim establish that it is entitled to indemnity from the reinsurer, for the claim might have been one for which the insurer was not bound to make payment." Id.
While these principles generally apply, the parties "may agree to such terms in the reinsurance agreement as will bind the reinsurer to a settlement or other adjustment of loss between the original insured and the original insurer." Couch, § 9:25, p. 9-34. A provision inserted in a reinsurance contract for that purpose is commonly referred to as a "follow the fortunes" clause because it requires that "`the reinsurer will follow the fortunes or be placed in the position of the [insurer].'" Bellefonte Reinsurance Co. v. Aetna Casualty & Surety Co., 903 F.2d 910, 912 (C.A.2, 1990), quoting Koehnen, Administration and Maintenance of Business in Force, which appears in Strain, Reinsurance (New York, NY: College of Insurance, 1980), p. 509.
Although the "follow the fortunes" doctrine is applicable in those instances where such a clause is part of the agreement, we are confronted in this appeal with the broad contention that such a provision is to be read into every reinsurance contract. In advancing this proposition, the court below relied heavily on Int'l Surplus Lines Ins. Co. v. Certain Underwriters & Underwriting Syndicates at Lloyd's of London, 868 F.Supp. 917 (S.D.Ohio, 1994), wherein a federal district court in Ohio ruled that even in the absence of express contract language, "the `Follow the Fortunes' doctrine applied to all reinsurance contracts." Id. at 920. As authority to support its ruling, the federal district court cited three cases. However, we note that in each of those cases, the reinsurance contract at issue contained specific language indicating incorporation of the "follow the fortunes" doctrine. See Mentor Ins. Co. (UK) Ltd. v. Brannkasse, 996 F.2d 506, 516 (C.A.2, 1993) ("The parties agree that the contract contains a `follow the fortunes' clause."), Unigard Security Ins. Co., Inc. v. North River Ins. Co., 762 F.Supp. 566, 586 (S.D.N.Y., 1991) ("The Certificate binds Unigard to `follow the fortunes' of North River on the Owens-Corning risk by providing that `[a]ll claims covered by this reinsurance when settled by [North River] shall be binding on the Reinsurers, who shall be bound to pay their proportion of such settlements.'"), and Christiania General Ins Corp of New York, supra at 280 ("The parties' contract states that `[t]he reinsurance provided under this certificate shall follow coverage of [Great American's] policy.").[1]
In this appeal, MTPP concedes that the reinsurance contract at issue "does not contain a specific `follow the fortunes' clause." Moreover, MTPP is unable to point to any Michigan authority for support of its position that such a provision should be read into the policy. Indeed, we find that Michigan guidance points in the opposite direction. In Michigan Millers, supra, this Court addressed a dispute between two insurance companies under a contract of reinsurance. The reasoning and explanation of reinsurance law provided by the Michigan Millers Court *765 is particularly instructive in this setting. There, our Court pointed to 19 Couch, Insurance, 2d, § 80.66, pp. 673-674, to emphasize that "[t]he extent of the liability of the reinsurer is determined by the language of the reinsurance contract, and the reinsurer cannot be held liable beyond the terms of its contract merely because the original insurer has sustained a loss." Id. at 414, 452 N.W.2d 841. At another point in Michigan Millers, this Court stated:
Although it is true that parties may agree to such terms in reinsurance as will bind the reinsurer to the settlement or adjustment of loss made between the parties to the original insurance, 19 Couch on Insurance 2d, § 80.13, p. 631, we will not impose liability on the reinsurer for a settlement contribution absent such an agreement. [Id. at 417-418, 452 N.W.2d 841.]
Such statements respecting reinsurance are completely consistent with a plethora of Michigan cases in the field of insurance law. For example, in Lehr v. Professional Underwriters, 296 Mich. 693, 697, 296 N.W. 843 (1941), our Supreme Court stated: "The liability was limited in the policy. To hold otherwise would be to write a new contract for the parties. This we have no right to do." See also Auto-Owners Ins. Co. v. Churchman, 440 Mich. 560, 566-567, 489 N.W.2d 431 (1992); Upjohn Co. v. New Hampshire Ins. Co., 438 Mich. 197, 207, 476 N.W.2d 392 (1991); Fragner v. American Community Mut. Ins. Co., 199 Mich.App. 537, 542-543, 502 N.W.2d 350 (1993); North River Ins. Co. v. Endicott, 151 Mich.App. 707, 712, 391 N.W.2d 454 (1986).
After careful consideration, we conclude and hold that the learned trial court erred in reading into the reinsurance contract at issue in this case a "follow the fortunes" clause that was not agreed to by the parties.

II
In light of our holding in the preceding paragraph, we turn now to a review of the trial court's ruling by summary disposition that FIC was required under its contract of reinsurance to indemnify MTPP for $91,500, the full amount by which the MTPP payments to the village exceeded $100,000.
We review de novo a trial court's grant of summary disposition. Coleman v. Kootsillas, 456 Mich. 615, 618, 575 N.W.2d 527 (1998). In determining whether summary disposition is appropriate, an appellate court must consider the entire record and construe reasonable inferences arising from the evidence in a light most favorable to the nonmoving party. Henderson v. State Farm Fire & Casualty Co., 225 Mich.App. 703, 708-709, 572 N.W.2d 216 (1997).
In the absence of specific contract language requiring FIC to indemnify MTPP on the basis of its good-faith settlement of policy claims, FIC maintains that MTPP did not meet the burden of showing that it was entitled to reimbursement in the amount granted. We agree. "[T]he insured bears the burden of proving coverage." Heniser v. Frankenmuth Mut. Ins. Co., 449 Mich. 155, 161, n. 6, 534 N.W.2d 502 (1995). Moreover, "[i]n an action on a policy of reinsurance, the plaintiff is bound to establish the fact of the amount of loss, which is not done by proof of payment to the owner of the property." Appleman, § 7699, p. 557. "[T]he true measure of damages is not what the reinsured has paid, but what he is bound under his policy to pay by reason of the loss." Id. at 558.
It is clear from a reading of the terms of both MTPP's policy with Thompsonville and its reinsurance contract with FIC that the parties intended to use "actual cash value," not to exceed replacement cost, as the basis for valuing property loss. As evidence of the value of the sixty-six-year-old former schoolhouse building, MTPP submitted the deposition testimony of Brian Howard, a claims adjuster with Adjusting Services Unlimited. Howard emphasized that his work was only an estimate and not a "true market evaluation." He figured the replacement cost of the building at $570,058 and then applied a depreciation factor of seventy-five percent, although he could not explain why he used this percentage and thought it was "a bit of an arbitrary thing." Using these figures, he estimated the actual cash value of the building at $142,514. FIC countered with a detailed evaluation by Archer Construction Co., *766 a local contracting firm. Archer determined the replacement cost at $422,892, which rendered an actual cash value of $105,723 by using the same seventy-five percent depreciation figure. FIC also presented an affidavit by Peter Strongrich, vice president of Adjusting Services Unlimited, stating that the Archer firm's cost analysis appeared to be "full and complete." Presumably, after subtracting the deductible of $100,000, the indemnification owed by FIC would have been only $5,723 (plus interest) if, for example, the court were to have made a determination that the Archer estimate represented the true cash value of the former schoolhouse.
Because the trial court found the "follow the fortunes" doctrine to be implied in the contract of reinsurance, it did not examine the value evidence in a light most favorable to FIC, as it was required to do, and it made no factual findings regarding the actual cash value of the former schoolhouse and its contents. The evidence presented by the parties raised a genuine issue of fact.
We therefore reverse the trial court's grant of summary disposition with respect to the amount of indemnification awarded to MTPP and remand for the trial court to make factual findings concerning the actual cash value of the building and its contents.

III
Defendant FIC also contends that it should be relieved of all liability for indemnification of MTPP on three grounds: (a) that the former schoolhouse was not specifically listed as a covered building in the primary policy, (b) that the building was excluded from coverage under the policy because it was vacant at the time of the fire, and (c) that MTPP is not entitled to recover because it failed to submit a timely sworn proof of loss statement as required by the reinsurance policy. We conclude that each of these arguments is without merit, and that the trial court did not err in finding FIC liable for indemnification under the reinsurance contract.

A
Although the old schoolhouse was situated on Lincoln Avenue in Thompsonville, its location was described as 101 Thompson Avenue in the schedule of covered buildings incorporated into the MTPP policy. However, a comparison of this policy with Thompsonville's earlier 1985 Transamerica policy revealed to the trial court the clear intent of the parties to cover the schoolhouse. The Transamerica policy lists the schoolhouse as location one, a building constructed of masonry and insured in the amounts of $181,500 for the building and $10,000 for its contents. The first listing on the MTPP schedule, while mistakenly locating the building on Thompson Avenue, lists the building as masonry and insures it for the identical amounts. It is undisputed that the Transamerica policy covered all of Thompsonville's six buildings in 1985. Evidence showed that after construction of only one new building in the interim, the 1991 MTPP policy covered seven buildings, one of which must have been the schoolhouse. Both policies indicated that two of the insured buildings were of masonry construction, and Thompsonville's only two masonry buildings were its firehouse and the old schoolhouse. We conclude, as did the trial court, that reasonable minds could not differ regarding the conclusion that MTPP's 1991 schedule of covered properties included the old schoolhouse. See Pinckney Community Schools v. Continental Casualty Co., 213 Mich.App. 521, 525, 540 N.W.2d 748 (1995).

B
Next, the MTPP policy excluded coverage of "vacant" buildings, but defined the term as "containing no contents pertaining to operations or activities customary to occupancy of the building." Testimony regarding the actual use of the old building and its contents, which included tables, chairs, kitchen facilities, and a piano, reflected its function as a community center. The trial court did not err in finding that while the building may have been unoccupied at the time of the fire, it was not vacant within the meaning of the term under the policy. See Giordano v. Markovitz, 209 Mich.App. 676, 678-679, 531 N.W.2d 815 (1995).[2]

*767 C
Third, in opposing MTPP's motion for summary disposition with regard to the issue of damages, FIC argued for the first time that MTPP was not entitled to coverage because it failed to submit a sworn proof of loss statement within ninety days after the loss. MTPP countered that this condition had been waived. We agree. While the trial court did not specifically address this argument, this Court may consider a legal question not determined by the lower court if the facts necessary for its resolution have been presented. Miller v. Inglis, 223 Mich.App. 159, 168, 567 N.W.2d 253 (1997).
We find that FIC waived the defense of failure to provide sworn proof of loss. In its answer to MTPP's complaint as intervening plaintiff, the reinsurer did not plead this defense "specifically and with particularity," as required by MCR 2.112(D)(2). See Lawrence v. Will Darrah & Associates, Inc., 445 Mich. 1, 4, n. 2, 516 N.W.2d 43 (1994). Furthermore, FIC did not raise this defense in its motions for summary disposition against Thompsonville or against MTPP. Generally, once an insurance company has denied coverage to its insured and stated its defenses, the insurer has waived or is estopped from raising new defenses. See Johnson v. Yorkshire Ins. Co., 224 Mich. 493, 195 N.W. 45 (1923); Popa v. Northern Ins. Co. of New York, 192 Mich. 237, 158 N.W. 945 (1916); In re Smith Estate, 226 Mich.App. 285, 290, 574 N.W.2d 388 (1997).

IV
On cross appeal, plaintiff MTPP challenges the trial court's refusal to award penalty interest, which is available under M.C.L. § 500.2006(4); MSA 24.12006(4) if an insurer fails to make timely payment of an insured's claim under an insurance contract, and if the claim is not "reasonably in dispute." Arco Industries Corp. v. American Motorists Ins. Co. (On Second Remand, On Rehearing), 233 Mich.App. 143, 148, 594 N.W.2d 74 (1998); Norgan v. American Way Life Ins. Co., 188 Mich.App. 158, 164-165, 469 N.W.2d 23 (1991); Siller v. Employers Ins. of Wausau, 123 Mich.App. 140, 143, 333 N.W.2d 197 (1983). We agree with the trial court's assessment that under the circumstances in this case defendant FIC was not unreasonable in disputing the claim. Accordingly, we find no clear error. Burnside v. State Farm Fire & Casualty Co., 208 Mich.App. 422, 431, 528 N.W.2d 749 (1995); Medley v. Canady, 126 Mich.App. 739, 743, 337 N.W.2d 909 (1983).
Finally, FIC argues that the trial court erred in imposing a sanction against FIC because it brought a motion for reconsideration of the court's ruling with regard to damages. A trial court's finding that a claim or motion is frivolous is reviewed on appeal for clear error. See LaRose Market, Inc. v. Sylvan Center, Inc., 209 Mich.App. 201, 210, 530 N.W.2d 505 (1995). In light of our remand, we find that FIC's motion for reconsideration was not frivolous, and we reverse the trial court's grant of sanctions.
Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction. Because in this appeal neither party has prevailed in full, neither party may tax costs pursuant to MCR 7.219.
NOTES
[*] Former Supreme Court justice, sitting on the Court of Appeals by assignment.
[1] Under California law, the doctrine may be implied in a contract of reinsurance by evidence that a custom or usage exists to "follow the settlements" of the reinsured. Nat'l American Ins. Co. of California v. Certain Underwriters at Lloyd's London, 93 F.3d 529, 537 (C.A.9, 1996).
[2] We note that although FIC presents the question of vacancy in its Statement of the Questions Involved and argues the issue in its brief on appeal, it also indicates in a footnote in its Revised Statement of Facts that it is not appealing the issue of vacancy.